UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
BDS III MORTGAGE CAPITAL G, LLC,  :
 :
           Plaintiff, :
 :    **COMPLAINT**
    vs. :
 :    Civil Action No.:
MARTIN NV II, INC., :
 :
           Defendant. :
------------------------------------------------------------ x

       Plaintiff BDS III Mortgage Capital G, LLC ("BDS III"), by and through its undersigned counsel, as and for its Complaint against defendant Martin NV II, Inc. ("Martin NV" or "Guarantor"), hereby alleges as follows:

## NATURE OF THE ACTION

       1.     This action arises out of Martin NV's breach of its contractual obligations as the guarantor on a $26 million commercial loan made to one of its affiliated entities.

       2.     In a recourse guaranty given expressly to induce BDS III's predecessor-in-interest to make the loan, Martin NV "absolutely and unconditionally guarantee[d]" the "prompt and unconditional payment" of certain of the borrower's obligations as set forth in the controlling loan documents.

       3.     The loan is non-recourse to the borrower, unless its personal liability is triggered by certain events identified in the loan documents. One of those triggering events occurred last month when the borrower filed for bankruptcy protection. This bankruptcy filing caused the loan to become fully recourse to the borrower which, in turn, triggered Martin NV's obligation under the recourse guaranty to pay all amounts due under the loan, including principal and accrued interest.

4. Despite due demand, Martin NV to date has failed and refused to pay any portion of the $29 million owed under the guaranty.

5. BDS III brings this action to recover its damages flowing from Martin NV's material breach of the plain and unambiguous terms of the guaranty.

## THE PARTIES

### Plaintiff

6. BDS III is a Delaware limited liability company maintaining its principal place of business in New York, New York. It is affiliated with, and operates as a subsidiary of, Bridge Investment Group Holdings Inc. ("Bridge").

7. Bridge is a publicly-traded real estate investment manager that, through its subsidiaries and affiliates, is engaged in the business of directly or indirectly acquiring, developing, operating and owning real estate. It is also in the business of making loans secured by real property. Bridge has over $43 billion of assets under management.

### Defendant

8. Martin NV is a Nevada corporation maintaining its principal place of business in Las Vegas, Nevada.

9. The President and sole Director of Martin NV is F. Martin Paris, Jr.

10. The two shareholders of Martin NV are The Frank Martin Paris, Jr. Revocable Trust and The Frank Martin Paris, Jr. Children's Trust.

11. Paris executed the subject guaranty on Martin NV's behalf as its President.

12. Paris controls Sedgwick Properties Development Corp. ("Sedgwick"), a Chicago-based real estate development company.

13. The borrower whose loan obligations are the subject of the underlying guaranty is an affiliate of Sedgwick.

14. Paris executed the underlying loan documents on behalf of the borrower.

## JURISDICTION AND VENUE

15. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332.

16. Complete diversity of citizenship exists in that Martin NV is a citizen of the State of Nevada and BDS III is not a citizen of the State of Nevada.

17. Specifically, BDS III's only member is BDS III REIT, Inc. BDS III REIT, Inc. is a corporation organized and existing under the laws of the State of Maryland and maintains its principal place of business in Sandy, Utah.

18. BDS III thus is a citizen of Maryland and Utah for jurisdictional purposes.

19. Martin NV is a corporation organized and existing under the laws of the State of Nevada and maintains its principal place of business in Las Vegas, Nevada.

20. Martin NV thus is a citizen of Nevada for jurisdictional purposes.

21. The amount in controversy exceeds $75,000 exclusive of interest and costs, as this dispute arises out of Martin NV's obligations with respect to a debt in an amount exceeding $29 million.

22. Venue is proper pursuant to 28 U.S.C. §1391(b)(2) and 28 U.S.C. §1391(b)(3) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Martin NV is subject to the Court's personal jurisdiction with respect to this action.

23. Further, the underlying guaranty provides that any action to enforce its terms may be filed in this Court and that, in any such proceeding, Martin NV "irrevocably submits" to the jurisdiction of this Court, and "irrevocably waives any objection which it may have at any time to the laying o[f] venue" of such suit in this Court.

## FACTUAL BACKGROUND

### A. The Loan

24. On September 23, 2020, BDS III's predecessor-in-interest, BDS III Mortgage Capital J LLC ("Lender"), made a loan (the "Loan") to 301 W North Avenue, LLC ("Borrower") in the principal amount of $26 million.

25. Borrower owns a 69-unit residential apartment building, commonly known as the North Park Pointe Apartments, in Chicago, Illinois (the "Property").

26. The Loan was made to refinance existing loans on the Property.

27. The Loan is evidenced by a Promissory Note dated September 23, 2020 in the original principal amount of $26,000,000.00 (the "Note"). A true and correct copy of the Note is attached hereto as Exhibit 1.

28. Paris, Guarantor's President, executed the Note on Borrower's behalf as the President of Borrower's managing member.

29. The Loan is secured by a Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated as of September 23, 2020 (the "Mortgage") that encumbers the Property and related personal property. A true and correct copy of the recorded Mortgage is attached hereto as Exhibit 2.

30. Paris executed the Mortgage on Borrower's behalf as the President of its managing member.

31. The Mortgage secures repayment of the Note and Borrower's other obligations under the loan documents.

32. The Loan was made pursuant to the terms of a loan agreement between Lender and Borrower dated as of September 23, 2020 (the "Loan Agreement). A true and correct copy of the Loan Agreement is attached hereto as Exhibit 3.

33. Paris signed the Loan Agreement on behalf of Borrower as the President of its managing member.

34. Section 10.1(g) of the Loan Agreement provides that it "shall constitute an 'Event of Default'" if Borrower commences "any case, proceeding or other action . . . under any Creditors Rights Laws seeking to have an order for relief entered with respect to it, or seeking to adjudicate it a bankrupt or insolvent, or seeking reorganization[.]"

35. Except in certain circumstances identified in the Loan Agreement, the Loan is non-recourse to Borrower. In other words, except in those specified circumstances, Borrower has no personal liability in the event of a default and the loan balance and interest can be recovered solely from the collateral securing the Loan.

36. Article 12 of the Loan Agreement enumerates those events that will trigger recourse liability.

37. Section 12.1(b)(B)(iii) provides that "the Debt shall be fully recourse to Borrower in the event that … Borrower … files a voluntary petition under the Bankruptcy Code or any other Creditors Rights Laws[.]"

38. The "Debt" is defined in Section 1.1 of the Loan Agreement as the outstanding principal amount of the Loan with all interest accrued and unpaid thereon, and all other sums due under the loan documents.

    **B.**    **The Guaranty**

39. As a condition to Lender making the Loan, Martin NV gave to Lender a Guaranty of Recourse Obligation date effective September 23, 2020 (the "Guaranty"). A true and correct copy of the Guaranty is attached hereto as Exhibit 4.

40. Paris executed the Guaranty on Martin NV's behalf as its President.

41. Section 8 of the Guaranty states that Martin NV "warrants and acknowledges that . . . Lender would not make the Loan but for this Guaranty[.]"

42. The absolute and unconditional nature of the obligations Martin NV assumed as Guarantor is made explicit throughout the Guaranty.

43. In Section 1 of the Guaranty, for example, Martin NV "absolutely and unconditionally guarantee[d] to Lender the prompt and unconditional payment of the Guaranteed Obligations."

44. The Guaranty in Section 1 defines the "Guaranteed Obligations" as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Article 12 of the Loan Agreement."

45. Section 12.1(b)(B)(iii) of the Loan Agreement makes the Loan fully recourse to Borrower if Borrower files a voluntary petition for bankruptcy.

46. The Guaranty at Section 7 provides that "[i]t is the intention of Borrower and Guarantor that the Guaranteed Obligations hereunder shall not be discharged except by Guarantor's performance of such Guaranteed Obligations and then only to the extent of such performance."

47. Section 2(a) of the Guaranty, in relevant part, provides:

> It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Loan Agreement, the Security Instrument or the other Loan Documents[.]

48. Section 2(b) of the Guaranty, in relevant part, provides:

> This is a guaranty of payment and not of collection and Guarantor shall be a primary obligor of the Guaranteed Obligations.  Upon the Guaranteed Obligations being incurred by Lender or upon any default of Borrower under the Note, the Loan Agreement, the

> Security Instrument or the other Loan Documents, Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder or any portion thereof, without proceeding against Borrower[.]

49. Section 2(c) of the Guaranty states that Martin NV's obligations under the Guaranty are not contingent on BDS III's ability to exercise any other remedy it may have under the loan documents to recover the outstanding amount of the Loan, such as a foreclosure of the Mortgage.

50. Section 2(c) provides:

> It is the intent of Guarantor and Lender that the obligations and liabilities of Guarantor hereunder are absolute and unconditional under any and all circumstances and that until the Guaranteed Obligations are fully and finally paid and performed, and not subject to refund or disgorgement, the obligations and liabilities of Guarantor hereunder shall not be discharged or released, in whole or in part, by any act or occurrence that might, but for the provisions of this Guaranty, be deemed a legal or equitable discharge or release of a Guarantor. This Guaranty shall be deemed to be continuing in nature and shall remain in full force and effect and shall survive the exercise of any remedy by Lender under the Security Instrument or any of the other Loan Documents, including, without limitation, any foreclosure or deed in lieu of foreclosure.

51. In Section 6 of the Guaranty, Martin NV "waive[d] all rights and defenses that Guarantor may have because Borrower's debt is secured by real property." Therein, Martin NV acknowledged that "[t]his means, among other things [that] Lender may collect from Guarantor without first foreclosing on any real or personal property collateral pledged by Borrower[.]"

52. The provisions of Section 6, Martin NV acknowledged therein, constitute "an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by real property."

7

53. In Section 7(e) of the Guaranty, Martin NV agreed that "the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired" by "the commencement of a case under the Bankruptcy Code by or against any person obligated under the Note, the Loan Agreement, the Security Instrument or the other Loan Documents[.]"

54. Section 7 of the Guaranty, in relevant part, further provides:

> It is further understood, that if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to declare the Debt due and payable on the happening of any default or event by which under the terms of the Note, the Loan Agreement, the Security Instrument or the other Loan Documents, the Debt shall become due and payable, Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.

55. The Guaranty provides that Martin NV would continue to be obligated thereunder with respect to not only Lender but also Lender's successors.

56. Specifically, Section 17(a) of the Guaranty, in relevant part, provides:

> Each reference herein to Lender shall be deemed to include its successors and assigns, to whose favor the provisions of this Guaranty shall also inure.

57. The Guaranty at Section 4 provides that Martin NV "will reimburse Lender . . . for all costs and expenses (including counsel fees . . . ) incurred by Lender in connection with the collection of the Guaranteed Obligations . . . or with the enforcement of this Guaranty[.]"

58. Section 21 of the Guaranty provides that the Guaranty is governed by, and must be construed in accordance with, New York law.

59. Section 16(g) of the Guaranty provides that any action to enforce the Guaranty may be commenced in any federal or state court located within New York County.

60. Further, Section 16(g) of the Guaranty provides that Martin NV "irrevocably submits to the nonexclusive jurisdiction" of the state or federal courts located within New York County.

61. The Guaranty, Note, Loan Agreement, Mortgage and related documents are referred to herein as the "Loan Documents".

    **C.**    **Assignment of the Loan Documents to BDS III**

62. The Loan Documents, including the Guaranty, have been the subject of four assignments.

63. BDS III is the current holder of the Guaranty, Loan, Note, Mortgage and the other Loan Documents.

64. BDS III has the authority to enforce those Loan Documents.

65. Effective as of June 21, 2021, Lender assigned the Guaranty, Note, Mortgage and other Loan Documents to another Bridge entity, BDS III Loan Seller LLC. The assignment of the Mortgage was recorded with the Cook County, Illinois, Recorder of Deeds ("Recorder") on July 12, 2021 as Document No. 2119304259. Attached hereto collectively as Exhibit 5 are true and correct copies of the documents relating to this assignment.

66. The assignment documents attached hereto as Exhibit 5 include a General Assignment in which Lender, as Assignor, assigned to BDS III Loan Seller LLC "all right, title and interest of Assignor, in and to the Loan . . . and all other agreements, including but not limited to guaranty agreements[.]"

67. Also effective as of June 21, 2021, BDS III Loan Seller LLC assigned the Guaranty, Note, Mortgage and other Loan Documents to another Bridge entity, BDS 2019-FL4

9

LTD. The assignment of the Mortgage was recorded with the Recorder on July 12, 2021 as Document No. 2119304260. Attached hereto collectively as Exhibit 6 are true and correct copies of the documents relating to this assignment.

68. The assignment documents attached hereto as Exhibit 6 include a General Assignment in which BDS III Loan Seller LLC, as Assignor, assigned to BDS 2019-FL4 LTD "all right, title and interest of Assignor, in and to the Loan . . . and all other agreements, including but not limited to guaranty agreements[.]"

69. Effective as of May 17, 2023, BDS 2019-FL4 LTD. assigned the Guaranty, Note, Mortgage and the other Loan Documents to another Bridge entity, BDS 2019-FL4 Retention Holder LLC. The assignment of the Mortgage was recorded with the Recorder on May 23, 2023 as Document No. 2314319104. Attached hereto collectively as Exhibit 7 are true and correct copies of the documents relating to this assignment.

70. The assignment documents attached hereto as Exhibit 7 include a General Assignment in which BDS 2019-FL4 LTD, as Assignor, assigned to BDS 2019-FL4 Retention Holder LLC "all right, title and interest of Assignor, in and to the Loan . . . and all other agreements, including but not limited to guaranty agreements[.]"

71. Finally, as of May 17, 2023, BDS 2019-FL4 Retention Holder LLC assigned the Guaranty, Note, Mortgage and the other Loan Documents to BDS III, the plaintiff herein. The assignment of the Mortgage was recorded with the Recorder on May 23, 2023 as Document No. 2314319105. Attached hereto collectively as Exhibit 8 are true and correct copies of the documents relating to this assignment.

72. The assignment documents attached hereto as Exhibit 8 include a General Assignment in which BDS 2019-FL4 Retention Holder LLC, as Assignor, assigned to BDS III

"all right, title and interest of Assignor, in and to the Loan . . . and all other agreements, including but not limited to guaranty agreements[.]"

### D. Borrower's Bankruptcy Filing Triggered Its Recourse Liability

73. Section 12.1(b)(B)(iii) of the Loan Agreement provides that the Debt becomes fully recourse to Borrower if Borrower "files a voluntary petition under the Bankruptcy Code[.]"

74. Borrower has recourse liability under this provision.

75. On February 27, 2024, Borrower filed a bankruptcy petition with the United States Bankruptcy Court for the Northern District of Illinois in the matter captioned <u>In re 301 W North Avenue, LLC</u>, Case No. 24-02741. A true and correct copy of Borrower's bankruptcy petition is attached hereto as Exhibit 9.

76. This bankruptcy filing followed the foreclosure action BDS III commenced against Borrower on December 15, 2023 in the Circuit Court of Cook County, Illinois, captioned <u>BDS III Mortgage Capital G, LLC v. 301 W North Avenue, LLC, et al.</u>, Case No. 2023CH 10061 (the "Foreclosure Action"). A true and correct copy of BDS III's Complaint in the Foreclosure Action (without exhibits) is attached hereto as Exhibit 10.

77. On January 22, 2024, BDS III filed a motion in the Foreclosure Action to appoint a receiver for the Property. A true and correct copy of BDS III's motion for the appointment of a receiver (without exhibits) is attached hereto as Exhibit 11.

78. Borrower filed its bankruptcy petition one day before the scheduled hearing on BDS III's motion for the appointment of a receiver.

79. As a result of Borrower's bankruptcy filing, the Foreclosure Action and related receiver motion have been automatically stayed.

80. Borrower's filing for bankruptcy protection constitutes a full recourse event under Section 12.1(b)(B)(iii) of the Loan Agreement.

81. Borrower's bankruptcy filing is not the only recent bankruptcy filing relating to the real estate operations controlled by Paris, who is Guarantor's President and sole Director as well as the President of Borrower's managing member.

82. On December 8, 2023, Paris himself filed for Chapter 7 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Illinois in the matter captioned <u>In re Frank Martin Paris, Jr.</u>, Case No. 23-16481.  A true and correct copy of Paris's bankruptcy petition is attached hereto as Exhibit 12.

83. According to multiple published reports, on or about December 8, 2023, Paris was arrested for civil contempt and jailed due to his failure to start paying off the debt he owes to his ex-wife in their divorce proceeding.  The debt, according to these reports, includes over $1.6 million in legal bills that Paris owes to both his ex-wife's attorney and his own lawyers.

84. Based on Paris's failure to pay these attorneys' fees, a warrant for Paris's arrest for civil contempt was issued.

85. On January 5, 2024, Paris reportedly was released from jail after posting a $150,000 bond.

### E. <u>Martin NV's Breach of the Guaranty</u>

86. The Guaranty obligates Martin NV, as Guarantor, to pay all amounts for which Borrower is personally liable as a result of Borrower's filing for bankruptcy protection.

87. As a result of the full recourse event under Section 12.1(b)(B)(iii) of the Loan Agreement, Martin NV became immediately liable under the Guaranty for the full amount of the debt due to BDS III under the Note, Loan Agreement and other Loan Documents.

88. As of March 6, 2024, the outstanding debt due under the Note, Loan Agreement and the other Loan Documents totaled $29,049,893.35.

89. By letter dated March 1, 2024, counsel for BDS III formally demanded that Martin NV make immediate payment of the amounts due under the Guaranty. A true and correct copy of the default letter is attached hereto as Exhibit 13. Therein, counsel for BDS III stated that "Guarantor has liability for the full amount of the Debt pursuant to the terms and provisions of the Guaranty and [BDS III] hereby demands immediate payment by Guarantor of such Debt in full."

90. Martin NV to date has paid no portion of the outstanding amount that it owes and is obligated to pay under the Guaranty.

## COUNT I
### (Breach of Contract)

91. BDS III incorporates and realleges each of the allegations set forth above in paragraphs 1 through 90 as if fully set forth herein.

92. The Guaranty constitutes a valid and enforceable contract between BDS III and Martin NV.

93. BDS III has performed all of its obligations under the Guaranty and the other Loan Documents.

94. Borrower materially breached its obligations under the Loan Agreement by filing a bankruptcy petition.

95. By virtue of Borrower's filing of a bankruptcy petition, the Loan became fully recourse to Borrower.

96. By virtue of Borrower's filing of a bankruptcy petition, Borrower became personally liable on the Debt due under the Note and the Loan Agreement.

97. By virtue of Borrower's filing of a bankruptcy petition, Martin NV, as Guarantor, became liable under the Guaranty for all amounts owed under the Note and the Loan Agreement as those amounts constitute Guaranteed Obligations of Martin NV under the Guaranty.

98. Despite due demand and in violation of the clear terms of the Guaranty, Martin NV has materially breached the Guaranty by failing and refusing to pay all amounts due under the Note and the Loan Agreement.

99. BDS III has sustained and will continue to sustain damages as a result of Martin NV's material breach of the Guaranty.

WHEREFORE, plaintiff BDS III Mortgage Capital G, LLC respectfully demands judgement against defendant Martin NV II, Inc. as follows:

- A. Damages constituting the entire amount of the debt currently due and owing under the Note, Mortgage, Loan Agreement and Guaranty, said amount being $29,049,893.35 as of March 6, 2024 and accruing interest under the Loan Documents daily;

- B. Reasonable attorneys' fees and costs incurred by BDS III in connection with the commencement and prosecution of this action to enforce its rights under the Guaranty; and,

- C. Such other and further relief as the Court deems just and proper under the circumstances.

Dated: New York, New York
March 11, 2024

    KELLEY DRYE & WARREN LLP

    By: /s/ William S. Gyves
        William S. Gyves
        Randall L. Morrison, Jr.

    3 World Trade Center
    175 Greenwich Street
    New York, New York 10007
    Telephone: (212) 808-7800
    Facsimile: (212) 808-7897
    wgyes@kelleydrye.com
    rmorrison@kelleydrye.com

    Attorneys for Plaintiff